### Waggoner et al. v. Stocks.

1. *Contract—Construction of.*—It appeared that the appellants made a verbal contract to bore a well upon appellee's land that would permanently furnish sufficient water for the wants of thirty to forty head of stock, and that sixty days should be allowed in which to test its capacity and permanency of the supply of water. Appellee put a pump in the well, which lacked thirty-five feet of reaching the bottom. *It was held* that by no fair construction of the contract could it be held that the appellants were required to furnish the necessary supply of water within the reach of such a pump. The capacity of the well, or the strength of the vein, could not be fairly tested in that way.

Memorandum.—Appeal from a judgment rendered by the Circuit Court of Moultrie County; the Hon. EDWARD P. VAIL, Circuit Judge, presiding. Heard in this court at the November term, A. D. 1892. Opinion filed June 5, 1893.

The opinion of the court states the case.

F. M. HARBAUGH and R. M. PEADRO, attorneys for appellants.

W. G. COCHRAN, attorney for appellee.

OPINION OF THE COURT, BOGGS, J.

This was an action brought by the appellants to recover for sinking a well for appellee. The work was done under a verbal contract which, as we think, the evidence shows, was that the appellants should bore a well upon the appellee's farm that would permanently furnish sufficient water for the wants of thirty to forty head of stock, and that the appellee should pay therefor the sum of $100, if the well, when fairly tested, should meet the demands of the agreement. The preponderance of the evidence is that the parties agreed that sixty days should be allowed in which to test the capacity of the well or rather permanency of the supply of water. The appellee testified that plenty of time was to be given. This contention we do not regard as important, for the reason that the action was not brought until sixty days in which to make the tests had expired, and not until after the appellee had, as he insisted, fully tested the well and found that it would not continue to supply water in sufficient quantity for the stock, according to the contract. Such alleged failure constituted the appellee's ground of defense. The judgment below was against the appellants, hence this appeal.

It appears from the evidence that appellants, under the contract, sunk a well for the appellee on his farm to the depth of 105 feet and reached a strong vein, the water from which flowed into and filled the well to within forty to fifty feet of the surface of the ground.

The parties, appellee and appellants, regarded the quantity of water thus procured, sufficient for the wants of the stock of the appellee, and the well completed, subject, however, to the condition that the vein would continue to furnish such requisite amount of water. It thereupon became the duty of the appellee to provide and place in the well a

pump, or other appliance suitable and proper for raising the water, and to operate the same in such manner as to determine whether the well would furnish a sufficient supply of water to meet the demands of the contract. The proof is that the appellee purchased and put in the well a pump, the pipe, or stock of which lacked, if we accept his testimony, thirty-five feet of reaching the bottom of the well. The party from whom the pump was purchased, testified that the stock, or pipe, was only fifty-five feet in length, from which, if true, it would appear that the bottom of the pump stock was fifty feet above the vein of the water.

By no fair construction of the contract can it be held that the appellants were required to furnish the necessary supply of water within the reach of such a pump. The capacity of the well, or the strength of the vein, could not be thus fairly tested.

Water, in abundance, might have been in the well, but too far below the end of the stock to be raised by the pump. It seems also clear, from the proofs, that, while the appellee was using the pump, the lower portion of the well became closed, or partially filled with sand and earth, or both, which impeded the flow of the water, and diminished the quantity that might otherwise have risen high enough to come within reach of the pump.

The well, for the depth of fifty-six feet, was twenty-two inches in diameter; thence for the distance of seventeen feet its diameter was sixteen inches, and its diameter was five inches the remainder of its depth. The five-inch hole became partially closed with sand or earth, so that the water could not rise through it.

It appears from the proofs most probable that the sand fell in from the sides of the five-inch hole, into which the pump stock did not extend. The earth came from the wider portion of the well above, being, there is much reason to believe, dislodged from the walls of such wider portion of the well by the motion of the end of the pump stock.

Had the pipe, or stock of the pump, been of such length that it would have reached into, and passed through, the five-inch

hole to the water in the vein, it would seem that the well would not have been closed up by the earth and sand, but might have yielded a sufficient amount of water for the wants of the stock it was designed to supply. The appellants devoted time and labor, and expended money in an honest and faithful effort to make a well for the appellee according to the contract, and under the proof, should have recovered, unless a fair test developed the fact that the supply of water procured was insufficient.

The contract did not require that the well should supply the requisite quantity of water within seventy feet of the surface, and nothing beyond a failure to do that, is shown.

We think the motion for a new trial should have been granted, and because it was denied, the judgment must be, and is, reversed.